NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____

| | | |
|---|---|---|
| BERNIE MIMS, | : | |
| Plaintiff, | : | Civ. No. 06-4551 (GEB) |
| v. | : | **MEMORANDUM OPINION** |
| SERGEANT JACKIE MCCALL, OFFICER JOHN LEDBETTER, AND OFFICER RON WARE, | : | |
| | : | |
| Defendants. | : | |

_____

## BROWN, Chief Judge

This matter comes before the Court upon the motion for default judgment of Bernie Mims ("Mims" or "Plaintiff") and the motion for summary judgment of Sergeant Jackie McCall ("McCall"), Officer John Ledbetter ("Ledbetter") and Officer Ron Ware ("Ware") (collectively, "Defendants"). The Court has reviewed the parties' submissions and decided the motions without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, the Court will deny Plaintiff's motion for default judgment and deny Defendants' motion for summary judgment.

## BACKGROUND

The following are the facts as alleged by Mr. Mims. At the time of the events at issue, Plaintiff was incarcerated at the Mercer County Corrections Center in Trenton, New Jersey. (Def. Br. Ex. A. ("Compl.") at 2.) Mr. Mims' cell, which he shared with two other inmates, was located on B-Pod, a maximum security unit. (Def. Br. at 2; Compl. at 2.) The unit was controlled by gang members, a fact known to the Center's correctional officers (including

Defendants).  (Compl. at 2-3.)

In the Fall of 2004, one of Mr. Mims' cell mates was threatened by gang members when he refused to hand his commissary over to them.  (*Id.* at 3.)  That cell mate was immediately moved away from the unit after he informed a correctional officer of the threats.  (*Id.*)  The week following his departure, three gang members approached both Mr. Mims and his remaining cell mate requesting that they relinquish their commissary.  (*Id.* at 3, 5.)  Mr. Mims and his cell mate refused to do so.  (*Id.*)  The gang members retreated, only to return in greater numbers to assault Mr. Mims' cell mate.  (*Id.*)  That inmate was promptly transferred from the unity following the incident. (*Id.*)

Mr. Mims had a conversation with one of the Defendants following the transfer of his second cell mate.  He informed the correctional officer that he did not feel safe in the B-Pod unit and that he too wanted to be transferred.  (*Id.*)  On October 26, 2004, Mr. Mims was called to speak to Sergeant Jackie McCall,[1] who instructed him to fill out a transfer request form.  (*Id.*)  That very evening, however, Mr. Mims was assaulted by several gang members in front of his cell.  (*Id.*)  Mr. Mims was stabbed repeatedly in the neck, shoulder and spine, and was transferred to the St. Francis medical center.  (*Id.* at 6.)

The procedural history of the case is as follows.  On June 19, 2006, Mr. Mims filed a

---

[1]    Neither Defendants' moving brief nor Plaintiff's opposition brief are particularly clear as to the identity of the officers to whom Mr. Mims spoke.   Defendants seem to indicate that Officer Ledbetter talked to Mr. Mims, and relayed his concerns to Sergeant McCall.  (Def. Br. at 4.)  Defendants also cite to Officer Ledbetter's report, however, in which he indicates that Mr. Mims directly informed all three Defendants of his concerns.  (*Id.*) Finally, Mr. Mims' Complaint suggests (as touched upon above) that he shared his concern with an unnamed correctional officer who then arranged for Mr. Mims to meet with Sergeant McCall. (Compl. at 2.)

complaint (the "Complaint") in the district court for the Eastern District of Pennsylvania alleging that Defendants knew that he was in serious danger and yet failed to protect him from other inmates.  (Def. Br., Ex. A).  The case was transferred to this Court on September 25, 2006.  (Docket Entry No. 1.)  On September 28, 2006 the undersigned dismissed Plaintiff's claims with respect to two of the defendants named in the Complaint.  (Def. Br. Ex. B; Docket Entry No. 13.)  On November 16, 2007 Magistrate Judge Bongiovanni filed an Order to Show Cause why a clerk's entry of default should not be effectuated.  (Def. Br. Ex. D; Docket Entry No. 29.)  On March 6, 2008 Plaintiff moved for an entry of default judgment against Defendants under Federal Rule of Civil Procedure 55(d).  (Docket Entry No. 40.)

**DISCUSSION**

      A.     Motion for Default Judgment

      Plaintiff contends that "[D]efendants have failed to respond to the Complaint in a timely manner, and . . . [that a] Judgment of Default should be entered as a matter of law."  (Pl. Default Mot. at 1.)  The Court disagrees.

      Default is governed by Federal Rule of Civil Procedure 55.  FED. R. CIV. P. 55.  "Pursuant to Rule 55(a), a plaintiff can request the clerk's entry of default against a party 'against whom a judgment for affirmative relief is sought that has failed to plead or otherwise defend as provided by these rules and that fact is made to appear by affidavit or otherwise." *Doug Brady, Inc. v. N.J. Bldg. Laborers Statewide Funds*, No. 07-1522, 2008 U.S. Dist. LEXIS 28324, at *18-19 (D.N.J. April 7, 2008), *quoting* FED. R. CIV. P. 55(a).  "Thereafter, the plaintiff may seek the Court's entry of default judgment under either Rule 55(b)(1) or Rule 55(b)(2)." *Doug Brady*, 2008 U.S. Dist. LEXIS 28324 at *19, *citing Nationwide Mutual Ins. Co. v. Starlight Ballroom Dance Club,*

*Inc.*, 175 F. App'x 519, 521, n.1 (3d. Cir. 2006).  "The district court has the discretion to enter default judgment, although entry of default judgments is disfavored as decisions on the merits are preferred."  *Super 8 Motels, Inc. v. Kumar*, No. 06-5231, 2008 U.S. Dist. LEXIS 28066, at *7 (D.N.J. April 1, 2008), *citing Hritz v. Woma Corp.*, 732 F.2d 1178, 1181 (3d Cir.1984).

"Before imposing the extreme sanction of default, district courts must make explicit factual findings as to: (1) whether the party subject to default has a meritorious defense, (2) the prejudice suffered by the party seeking default, and (3) the culpability of the party subject to default."  *Doug Brady*, 2008 U.S. Dist. LEXIS 28324, at *19, *quoting Emcasco Ins. Co. v. Sambrick*, 834 F.2d 71, 74 (3d Cir. 1987) ("[W]e have further required the district court to make explicit findings concerning the factors it must consider in rendering judgment by default or dismissal, or in declining to reopen such judgment").  "In weighing these factors, district courts must remain mindful that, like dismissal with prejudice, default is a sanction of last resort."  *Doug Brady*, 2008 U.S. Dist. LEXIS 28324, at *19, *citing Poulis v. State Farm Fire & Cas. Co.*, 747 F.2d 863, 867-68 (3d Cir. 1984) . District courts must accordingly resolve doubt in a close case in favor of proceeding on the merits.  *Zawadski de Bueno v. Bueno Castro*, 822 F.2d 416, 420 (3d Cir. 1987).

As noted by Judge Bongiovanni in her November 16, 2007 Order to Show Cause, Defendants' Answer was due no later than November 13, 2006, yet Defendants only filed their Answer on December 7, 2007.  (Docket Entry Nos. 29, 34.)  Defendants did not file a brief in opposition to Plaintiff's motion for default judgment, but instead included the following paragraph in the Declaration of Sarah G. Crowley which accompanied Defendants' December 7, 2007 Answer:

> As a result of excusable neglect, the file was assigned for
> processing by a staff member.  However, due to clerical error the
> Answer was never filed with the Court.  Once this matter was
> brought to my attention I have proceeded to file the necessary
> responsible pleadings and would request the Court allow the
> Defendants to file Answer out of time.

(Docket Entry No. 34-2, at ¶ 5.)

As a threshold matter, the Court notes that the Clerk of Court denied Mr. Mims' request

for an entry of default under Federal Rule of Civil Procedure 55(a), and that the Court cannot

therefore enter a default judgment under Rule 55(b).  *Husain v. Casino Control Comm'n*, No. 07-

3636, 2008 U.S. App. LEXIS 3700, at *4 (3d Cir. Feb. 20, 2008) ("[E]ntry of default by the

Clerk under Federal Rule of Civil Procedure 55(a) constitutes a general prerequisite for a

subsequent default judgment under Rule 55(b).").

Moreover, even if the Clerk had entered a default, there is no allegation by Mr. Mims that

the Defendants' delay in filing an Answer was the result of bad faith on their part, nor is there

any evidence that said delay caused Mr. Mims any significant prejudice.  The Court would

therefore have to decline to grant Mr. Mims' motion for default judgment.  *See Doug Brady*,

2008 U.S. Dist. LEXIS 28324, at *20; *see also Super 8 Motels*, 2008 U.S. Dist. LEXIS 28066, at

*7-8  ("[W]hen considering a motion for default judgment, a court may consider the following

factors: . . .  whether the default is primarily technical; . . . whether the default was attributable to

good faith, mistake, or excusable neglect . . . .").

B.      Motion for Summary Judgment

Defendants, on the other hand, request that the Court issue a summary judgment that they

5

are entitled to qualified immunity from liability under 42 U.S.C. § 1983.  The Court will deny Defendants' request.

A party seeking summary judgment must "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P.  56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Hersh v. Allen Prod. Co.*, 789 F.2d 230, 232 (3d Cir. 1986).  The threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (noting that no issue for trial exists unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict in its favor).  In deciding whether triable issues of fact exist, the court must view the underlying facts and draw all reasonable inferences in favor of the non-moving party.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Pa. Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir. 1995); *Hancock Indus. v. Schaeffer*, 811 F.2d 225, 231 (3d Cir. 1987).

Defendants submit that they are entitled to qualified immunity because they "acted reasonably given the facts at hand".  (Def. Br. at 10.)  They claim that they told Mr. Mims to fill out a transfer request slip and an incident report, and that Mr. Mims failed to do so.  (*Id.*)  Moreover, they insist that Mr. Mims did not inform the correctional officers that he feared for his life in B-Pod.  (*Id.* at 10.)

"As an 'accommodation of competing values,' qualified immunity strikes a balance by permitting a plaintiff to recover for constitutional violations where the defendant officer was 'plainly incompetent or . . . knowingly violate[d] the law,' while immunizing an officer who

'made a reasonable mistake about the legal constraints on his actions.'" *Farmer v. Hayman*, No. 06-3084, 2008 U.S. Dist. LEXIS 2241, at *15-16 (D.N.J. Jan. 11, 2008), *citing Curley v. Klem*, 499 F.3d 199, 206-07 (3d Cir. 2007).   Courts have adopted a two-step inquiry to "determin[e] whether a governmental officer is entitled to qualified immunity.  First, the Court must address whether 'the officer's conduct violated a constitutional right.'" *Farmer*, 2008 U.S. Dist. LEXIS 2241, at *16, *quoting Saucier v. Katz*, 533 U.S. 194 (2001).  "If, and only if, the court finds a violation of a constitutional right, the court moves to the second step of the analysis and asks whether immunity should nevertheless shield the officer from liability." *Farmer*, 2008 U.S. Dist. LEXIS 2241, at *16-17, *citing Curley*, 499 F.3d at 207.  "The inquiry under this second step addresses whether the right was clearly established." *Farmer*,  2008 U.S. Dist. LEXIS 2241*, at* *17, *citing Saucier*, 533 U.S. at 201.

        It is well established that "prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners."  *Farmer v. Brennan*, 511 U.S. 825, 833 (1994), *quoting Cortes-Quinones v. Jimenez-Nettleship*, 842 F.2d 556, 558 (1st Cir. 1988).  However, an official will not be deemed liable under the Eighth Amendment for denying an inmate humane confinement conditions "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Brennan*, 511 U.S. 825, at 837.  In essence, the prisoner must establish the "prison official's deliberate indifference to a substantial risk of serious harm" to the inmate.  *Id.* at 828; *see also Bacon v. Sherrer*, No. 06-504, 2008 U.S. Dist. LEXIS 28065, at *14 (D.N.J. April 1, 2008) ("To survive a motion for summary judgment on a failure to protect claim, a plaintiff must produce evidence

that he is incarcerated under conditions posing a substantial risk of serious harm and that prison officials acted with deliberate indifference . . ."). "[I]t is not enough that a prison official should have been aware of some risk to prison inmates." *Bacon*, 2008 U.S. Dist. LEXIS 28065, at *14, *citing Beers-Capitol v. Whetzel*, 256 F.3d 120, 133 (3d Cir. 2001).

Reviewing all allegations in the light most favorable to Plaintiff, it appears that there remain genuine issues of material fact as to whether the Defendants acted with deliberate indifference to a risk of serious harm to Mr. Mims.  Defendants insist that the correctional officers did not know of the danger faced by Mr. Mims because he allegedly never mentioned that he feared for his life.  This is contested by Mr. Mims, who claims that he told at least two fo the Defendants of his great concern for his security.  Moreover, the fact that two of Mr. Mims' cell mates were transferred because of the threat of violence from gang members (and that one of them was set upon by gang members) may suggest that the Defendants were aware of the risk run by Mr. Mims.

The Court also notes Defendants' argument that Mr. Mims was told to fill out a transfer request form if he felt it necessary, but that Mr. Mims never did so.  The parties seem to agree that Mr. Mims was assaulted by his fellow inmates on the very night he was told to apply for a transfer.  It remains unclear to the Court, however, whether the transfer form was immediately made available to him. If it was not, Mr. Mims' alleged failure to submit it promptly cannot be deemed to clear the issue of fact as to whether the Defendants knew of the risk to which Mr. Mims was exposed.

**CONCLUSION**

For the foregoing reasons, the Court will deny Plaintiff's motion for an entry of default

8

judgment, and deny Defendants' motion for summary judgment.  An appropriate form of Order

accompanies this Opinion.

Dated: May 30, 2008

_  s/ Garrett E. Brown, Jr.  _
GARRETT E. BROWN, JR., U.S.D.J.
